IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JUSTIN VAZQUEZ,<br>    Petitioner | :<br>: | |
| | : | No. 1:21-cv-1049 |
| v. | :<br>: | |
| | : | (Judge Rambo) |
| WARDEN H. QUAY,<br>    Respondent | :<br>: | |

## **MEMORANDUM**

On June 15, 2020, *pro se* Petitioner Justin Vazquez ("Petitioner"), who is currently incarcerated at the United States Penitentiary-High in Florence, Colorado ("USP Florence"), initiated the above-captioned action while he was incarcerated at the Federal Correctional Complex Allenwood ("FCC Allenwood") in White Deer, Pennsylvania, by filing a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241, challenging five (5) incident reports he received while at LightHouse, his halfway house/RRC placement. (Doc. No. 1.) Petitioner paid the requisite filing fee on June 21, 2021. (Doc. No. 4) In an Order dated that same day, the Court directed Respondent to show cause why Petitioner should not receive the relief he seeks. (Doc. No. 5.) After receiving two (2) extensions of time (Doc. Nos. 8, 9, 12, 13), Respondent filed his response on August 2, 2021 (Doc. No. 15). Petitioner filed his traverse (Doc. No. 22) on September 27, 2021 after receiving two (2) extensions of

time (Doc. Nos. 17, 20). Petitioner's § 2241 petition is, therefore, ripe for disposition.

I. **BACKGROUND**

On January 29, 2015, the United States District Court for the Western District of New York sentenced Petitioner to serve 72 months' incarceration for being a felon in possession of a firearm. (Doc. No. 15-1 at 7.) His projected release date, with good conduct time, is December 23, 2021. (*Id.* at 9.) Petitioner arrived at LightHouse on September 29, 2020. (*Id.* at 141.) Prior to his arrival, Petitioner had signed the Community Based Program Agreement, acknowledging that he understood and would comply with all facility rules and regulations. (*Id.* at 10.) While at LightHouse, "Petitioner received five (5) incident reports for 300 level series infractions." (*Id.* at 3.) Petitioner was released from LightHouse on December 8, 2020. (*Id.* at 4.) The Court sets forth the facts regarding each Incident Report in question below.

A. **November 12, 2020 Incident Report**

On November 12, 2020, Petitioner was charged with violating Code 320, failure to stand count. (Doc. No. 15-1 at 62.) The Incident Report was issued because Petitioner failed to report to the Program Monitor's desk for the 10:00 a.m. head count, despite being in the building at that time. (*Id.*) Petitioner had previously

received a warning on October 18, 2020 for failing to report for count. (*Id.*) When Petitioner was given the Incident Report and advised of his right to remain silent, he stated: "So you wrote me up for not coming to count naw I don't want that." (*Id.* at 63.) He shut the door on the staff member's face and did not take the Incident Report or any of the accompanying papers. (*Id.*)

Petitioner appeared before LightHouse's Center Disciplinary Committee ("CDC") on November 17, 2020 for his disciplinary hearing. (*Id.* at 57.) Petitioner waived his right to a staff representative and did not request any witnesses. (*Id.*) He was advised of his rights and refused to sign the necessary paperwork, stating "I'm not signing anything." (*Id.* at 59.) Petitioner admitted to the charge and said he did not come down for count because he was tired. (*Id.* at 57.) In addition to the Incident Report, the CDC considered the Resident Handbook, which stated that residents were required to report to the front desk for count at 10:00 a.m., 2:00 p.m., and 8:00 p.m. if they were in the building. (*Id.*) The CDC noted that Petitioner acknowledged receipt of the Resident Handbook on March 12, 2020. (*Id.*) The CDC found that Petitioner committed the violation as charged, and the matter was referred to the Disciplinary Hearing Officer ("DHO") for sanctions. (*Id.* at 58.) The DHO sanctioned Petitioner with a disallowance of fourteen (14) days of good conduct time. (*Id.*)

## B.     November 14, 2020 Incident Report

On November 14, 2020, Petitioner was charged with violating Code 307, refusing to obey an order from a staff member. (*Id.* at 69.) The Incident Report was issued because at 2:05 p.m., a Program Monitor called the Case Manager in the Employment Office to ask if Petitioner could leave early for work. (*Id.*) The Case Manager checked SecurManage and noted that Petitioner was scheduled to leave at 2:30 p.m. for his 4:00 p.m. shift, so she informed the Program Monitor that Petitioner could not leave until 2:30 p.m. (*Id.*) Petitioner responded that he was walking to work and needed more time. (*Id.*) The Case Manager mapped the route to Advance Auto Parts and noted that it would take Petitioner an hour and 23 minutes to get there. (*Id.*) She told the Program Monitor that Petitioner could leave at 2:30 p.m. and have enough time to get to work. (*Id.*)

Petitioner proceeded to go to the Employment Office and enter without permission. (*Id.*) He asked the Case Manager again if he could leave early, and she told him he could not. (*Id.*) Petitioner claimed that he would not have enough time, and the Case Manager told him that he should have put an earlier time on his itinerary if he needed to walk. (*Id.*) Petitioner was told to leave the office, and he responded that he would not leave and that the Case Manager was being ignorant. (*Id.*) Petitioner was told to leave immediately, and he stepped closer to the desk and said,

4

"I'm not leaving this office until you let me leave early for work." (*Id.*) The Case Manager told Petitioner that he could leave at 2:30 p.m. (*Id.*) Petitioner responded that he needed to leave early; the Case Manager told him that he could not and that the last time she let him leave early for work he went to his mother's house without permission. (*Id.*) Petitioner said that the Case Manager was not allowed to hold that against him. (*Id.*) The Case Manager again asked Petitioner to leave and he responded, "No I am not leaving. I try to talk to you and you tell me to leave I am done talking to you, this shit is ridiculous. I am leaving for work and never coming back." (*Id.*) When Petitioner was given the Incident Report, he read it and it was read to him. (*Id.*) Petitioner refused to sign it and instead left it on the desk and asked another staff member for dinner. (*Id.*)

The CDC held a hearing on November 17, 2020. (*Id.* at 67.) Petitioner was advised of his rights and waived his right to a staff representative and to call witnesses. (*Id.* at 67, 71.) Petitioner admitted to the charge, and when asked if he was asked to leave the office, he responded "yes." (*Id.*) Petitioner was asked why he did not leave and he said, "Because I want to get my point across." (*Id.*) The CDC found that Petitioner violated Code 307 as charged and referred the matter to the DHO for sanctions. (*Id.* at 68.) The DHO sanctioned Petitioner by disallowing fourteen (14) days of good conduct time. (*Id.*)

### C.     November 21, 2020 Incident Report

On November 21, 2020, Petitioner was charged with violating Code 309, violating a condition of a community program. (*Id.* at 78.) The Incident Report was issued when Petitioner went to a Program Manager to inform her that he needed to go for a random drug test. (*Id.*) The Program Manager called Petitioner's supervisor at Advance Auto Parts to confirm the test and then used Google Maps to map the route to the testing site, which would take an hour and three (3) minutes. (*Id.*) The Program Manager told Petitioner that he could leave at 12:30 p.m., arrive for the drug test at 1:30 p.m., leave there at 2:30 p.m., and be back to LightHouse at 3:30 p.m. (*Id.*) At 2:30 p.m., the Program Manager noted that Petitioner had missed his 1:30 p.m. and 2:30 p.m. calls. (*Id.*) Petitioner had not called to report that he had had arrived at the drug testing site. (*Id.*) Petitioner was given a copy of the Incident Report on November 21, 2020 and stated "I'm not taking shit I'm not signing shit." (*Id.* at 78-79.)

The CDC held a hearing on the Incident Report on November 24, 2020. (*Id.* at 76.) Petitioner was advised of his right to appear before the CDC and waived thar right. (*Id.* at 80.) He declined to appear but refused to sign a Waiver of Appearance. (*Id.*) The CDC found that Petitioner violated Code 309 as charged, and the DHO

subsequently sanctioned Petitioner by disallowing fourteen (14) days of good conduct time. (*Id.* at 77.)

### D.   November 27, 2020 Incident Report

On November 27, 2020, Petitioner was charged with violating Code 309, violating a condition of a community program. (*Id.* at 88.) The Incident Report was issued when Petitioner missed his call time at 1:00 p.m., when he was supposed to be at work from 1:00 p.m. to 9:00 p.m. (*Id.*) When the Director called Petitioner at 1:15 p.m., he said he was still walking to work. (*Id.*) The Director informed Petitioner that he was supposed to be at work already. (*Id.*) Petitioner was supposed to take the bus instead of walking.[1] (*Id.*) That same day, Petitioner read the Incident Report but would not sign or take possession of his copy. (*Id.* at 89.)

The CDC held a hearing on November 30, 2020. (*Id.* at 86.) Petitioner declined to appear and refused to sign a Waiver of Appearance. (*Id.* at 90.) The CDC found that Petitioner committed the act as charged and referred the matter to the DHO for sanctions. (*Id.* at 87.) The DHO sanctioned Petitioner with disallowance of fourteen (14) days of good conduct time. (*Id.*)

---

[1] LightHouse residents "must list their method of travel when signing out" and cannot change that method without prior approval. (Doc. No. 15-1 at 3.) "Deviating from the approved method of travel without permission is prohibited and the resident will be out of place and appropriate disciplinary action will be taken." (*Id.*)

### E.     November 28, 2020 Incident Report

On November 28, 2020, Petitioner was charged with violating Code 309, violating a condition of a community program. (*Id.* at 98.) The Incident Report was issued when a Case Manager noticed that Petitioner had not reported for the 10:00 a.m. count. (*Id.*) The Case Manager went to Petitioner's room and knocked on his door, reminding him to report. (*Id.*) Petitioner came downstairs and went into the kitchen. (*Id.*) The Case Manager told him that he needed to report to the desk for count; Petitioner ignored her and continued to walk into the kitchen. (*Id.*) Petitioner came to the desk at 10:30 a.m. but did not have a mask on. (*Id.*) The Case Manager gave him a mask, but he refused to put it on. (*Id.*) The Case Manager told Petitioner that he had missed count and that she needed to take his temperature, but he backed away. (*Id.*) Petitioner refused to wear a mask and to have his temperature taken. (*Id.*) Petitioner was charged with violating Code 309 for refusing orders and missing count. (*Id.*) That same day, Petitioner was read the Incident Report and advised of his rights, but he refused to sign. (*Id.* at 99.)

The CDC held a hearing on November 30, 2020. (*Id.* at 96.) Petitioner declined to appear and refused to sign a Waiver of Appearance. (*Id.* at 100.) The CDC found that Petitioner committed the act as charged and referred the matter to

8

the DHO for sanctions. (*Id.* at 77.) The DHO sanctioned Petitioner with disallowance of fourteen (14) days of good conduct time. (*Id.*)

    **F.    Summary of Petitioner's § 2241 Petition**

Petitioner then filed the instant § 2241 petition. (Doc. No. 1.) In his petition, Petitioner argues that his due process rights were violated because he was never served with any of the five (5) Incident Reports and was never afforded his rights to be present or present defenses at the disciplinary hearings. (*Id.* at 6-7.) He also asserts that the DHO imposed sanctions without placing him on notice of the Incident Reports. (*Id.* at 8.) As relief, Petitioner seeks reversal of all sanctions and immediate release to his respective Probation Office to begin his term of supervised release. (*Id.*)

**II.    DISCUSSION**

Respondent asserts that Petitioner's § 2241 petition should be denied because: (1) Petitioner failed to exhaust his administrative remedies; and (2) he received due process during the course of all of his disciplinary proceedings. (Doc. No. 15 at 3.) The Court considers each argument in turn.

    **A.    Exhaustion of Administrative Remedies**

While § 2241 does not contain an explicit statutory exhaustion requirement, the United States Court of Appeals for the Third Circuit has consistently required a

petitioner to exhaust his administrative remedies before filing a § 2241 petition. *Moscato v. Fed. Bureau of Prisons*, 98 F.3d 757, 760 (3d Cir. 1996). Exhaustion is required "for three reasons: (1) allowing the appropriate agency to develop a factual record and apply its expertise facilitates judicial review; (2) permitting agencies to grant the relief requested conserves judicial resources; and (3) providing agencies the opportunity to correct their own errors fosters administrative autonomy." *Id.* at 761-62 (citing *Bradshaw v. Carlson*, 682 F.2d 1050, 1052 (3d Cir. 1981)). Thus, "a federal prisoner who . . . fails to exhaust his administrative remedies because of a procedural default, and subsequently finds closed all additional avenues of administrative remedy, cannot secure judicial review of his habeas claim absent a showing of cause and prejudice." *Id.* at 762. Exhaustion, however, is not required when it would not promote these goals, such as when exhaustion would be futile. *See, e.g.*, *Gambino v. Morris*, 134 F.3d 156, 171 (3d Cir. 1998).

The Bureau of Prisons ("BOP") has a multi-step administrative remedy program allowing an inmate "to seek formal review of an issue relating to any aspect of his/her own confinement." 28 C.F.R. § 542.10(a). First, an inmate should attempt inform resolution of the issue with the appropriate staff member. *Id.* § 542.13(b). If informal resolution is unsuccessful, the inmate may submit a formal written grievance, using the BP-9 form, to the Warden within twenty (20) calendar days

"following the date on which the basis for the Request occurred." *Id.* § 542.14(a). The Warden is to respond to the request within twenty (20) calendar days. *Id.* § 542.18. An inmate dissatisfied with the Warden's response may appeal, using the BP-10 form, "to the appropriate Regional Director within 20 calendar days of the date the Warden signed the response." *Id.* § 542.15(a). Finally, an inmate may appeal the Regional Director's response, using the BP-11 form, to the BOP's General Counsel "within 30 calendar days of the date the Regional Director signed the response." *Id.*

In the instant case, Respondent asserts that Petitioner has filed only one administrative remedy, 1073709-F1, requesting restoration of good conduct time. (Doc. No. 15-1 at 136.) On April 6, 2021, the Warden denied the administrative remedy. (*Id.* at 135.) This administrative remedy, however, does not assert any alleged due process violations regarding the five (5) Incident Reports discussed above.

In his § 2241 petition, Petitioner asserts that he appealed the Incident Reports to the BOP's Northeast Regional Office. (Doc. Nos. 1 at 2, 1-1 at 1-3, 14 at 4.) Petitioner requested an extension of time to submit his remedy "as a result of being in transit." (Doc. No. 1-1 at 3.) He asserts that, as of July 29, 2021, he had not received a response from the Regional Office and, therefore, could not appeal to the

11

Central Office. (Doc. No. 14 at 4.) In his traverse, Petitioner reiterates that he never received a response from the Regional Office. (Doc. No. 22 at 10-11.) He suggests that exhaustion of his administrative remedies would have been "wholly futile, as all the [BOP] would have done was affirm the DHO review and administrative appeals all the way up." (*Id.* at 11.)

The Administrative Remedy Generalized Retrieval document submitted by Respondent indicates that on February 19, 2021, the Regional Office received administrative remedy 1074395-R1, Petitioner's CDC appeal. (Doc. No. 15-1 at 125.) Petitioner's appeal was rejected on March 27, 2021 with a notation that he needed to complete a separate BP-10 for each Incident Report he wished to appeal. (*Id.*) There is no record of Petitioner resubmitting BP-10s for each Incident Report. Moreover, even if Petitioner did not receive the Regional Office's rejection of his appeal, the administrative remedy regulations provide that "[i]f the inmate does not receive a response within the time allotted for reply, including extension, the inmate may consider the absence of a response to be a denial at that level." 28 C.F.R. § 542.18. Petitioner, therefore, could have pursued an appeal to the Central Office even without receiving a response from the Regional Office.

The record before the Court, therefore, demonstrates that Petitioner did not exhaust his administrative remedies with respect to the Incident Reports noted

12

above. For that reason alone, his § 2241 petition must be denied. Nevertheless, the Court considers the merits of his due process claim below.

### B. Merits of Petitioner's Claim

Liberty interests protected by the Fifth Amendment may arise either from the Due Process Clause itself or from statutory law. *Torres v. Fauver*, 292 F.3d 141 (3d Cir. 2002). It is well settled that "prison disciplinary proceedings are not part of a criminal prosecution and the full panoply of rights due a defendant in such proceedings does not apply." *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). Nevertheless, the Supreme Court has held that that there can be a liberty interest at stake in disciplinary proceedings in which an inmate loses good conduct time. *Id.* at 557. Because Petitioner's sanctions included the loss of good conduct time, he has identified a liberty interest.

In *Wolff*, the Supreme Court set forth the following minimum procedural due process rights to be afforded to a prisoner accused of misconduct in prison which may result in the loss of good time credit: (1) the right to appear before an impartial decision-making body; (2) twenty-four hour advance written notice of the disciplinary charges; (3) an opportunity to call witnesses and present documentary evidence in his defense when it is consistent with institutional safety and correctional goals; (4) assistance from an inmate representative if the charged inmate is illiterate

13

or complex issues are involved; and (5) a written decision by the fact finder of the evidence relied upon and the rationale behind the disciplinary action. *Wolff*, 418 U.S. at 563-67. The Supreme Court has held that the standard of review about the sufficiency of the evidence is whether there is "any evidence in the record that could support the conclusion reached by the disciplinary board." *Superintendent v. Hill*, 472 U.S. 445, 455-56 (1985); *see also Griffin v. Spratt*, 969 F.2d 16, 19 (3d Cir. 1992). If there is "some evidence" to support the decision of the hearing examiner, the court must reject any evidentiary challenges by the plaintiff. *Hill*, 472 U.S. at 457. The *Hill* standard is minimal and does not require examination of the entire record, an independent analysis of the credibility of the witnesses, or even a weighing of the evidence. *See Thompson v. Owens*, 899 F.2d 500, 501-502 (3d Cir. 1989).

Because the incidents in question occurred at LightHouse, "due process is afforded at a [CDC] hearing." *Hemmings v. Ebbert*, No. 1:15-cv-1298, 2016 WL 1055354, at *4 (M.D. Pa. Feb. 25, 2016), *report and recommendation adopted*, 2016 WL 1045587 (M.D. Pa. Mar. 16, 2016). BOP Program statement 7300.09 governs disciplinary proceedings at community corrections facilities and provides that such facilities are "required to develop and tailor internal disciplinary procedures to conform with the due process mandates defined . . . in *Wolff*." *Id.* A CDC's

procedures generally track "those procedures as set forth in BOP Program Statement 5270.09, *Inmate Discipline*." *Manfredi v. United States*, No. CIV. 12-1905, 2012 WL 5880343, at *5 (D.N.J. Nov. 20, 2012).

At LightHouse, residents are "entitled to a fair and judicial process regarding the handling of any disciplinary matter." (Doc. No. 15-1 at 42.) The process for any "major disciplinary matter" includes: (1) notice of charges; (2) notice of hearing; (3) 24-hour preparation; (4) staff representation; (5) calling of witnesses; (6) offering of testimony; (7) cross-examination of witnesses; and (8) appeal of findings. (*Id.* at 42-43.) BOP residents who receive Incident Reports "will be subject to disciplinary action should it be determined that the violation of program rules has occurred." (*Id.* at 44.) Available formal sanctions include, *inter alia*, the loss or forfeiture of good conduct time and a return to higher custody. (*Id.*) If a resident receives a "series of incident reports, he/she may be deemed to have demonstrated an unwillingness or inability to comply with the program rules and his/her continued placement at the program may be jeopardized." (*Id.*)

The CDC must consider all evidence presented at the hearing. *Ulatowski v. Ebbert*, No. 1:12-cv-254, 2013 WL 504611, at *4 (M.D. Pa. Jan. 14, 2013), *report and recommendation adopted*, 2013 WL 498733 (M.D. Pa. Feb. 8, 2013). The CDC must prepare a record, including documentation of the "advisement of inmate rights,

the CDC's findings, the CDC's decision[,] and the specific evidence relied upon." *Hemmings*, 2016 WL 1055354, at *4. After the hearing, "the CDC submits a comprehensive hearing packet, along with its recommended disposition, the BOP's designated DHO." *Id.* (citing *Sierra v. Scism*, No. 1:10-cv-1885, 2010 WL 5553955, at *6 (M.D. Pa. Dec. 14, 2010), *report and recommendation adopted*, 2011 WL 65665 (M.D. Pa. Jan. 7, 2011)). The DHO reviews the hearing packet "to ensure that due process requirements have been satisfied and makes a final decision regarding any sanctions to be imposed for any infractions found to have been committed as supported by the evidence. The record must include a brief statement of the reasons for the sanction imposed." *Id.* Moreover, a copy of the record must be delivered to the inmate. *Id.*

In his petition, Petitioner argues that his due process rights were violated because he was never served with any of the five (5) Incident Reports and was never afforded his rights to be present or present defenses at the disciplinary hearings. (Doc. No. 1 at 6-7.) He also asserts that the DHO imposed sanctions without placing him on notice of the Incident Reports. (*Id.* at 8.) To the extent Petitioner asserts that he was entitled to a DHO hearing, his argument fails. Because he was housed at a halfway house at the time, due process was afforded at the CDC hearing, not a DHO hearing. Moreover, Petitioner was not entitled to be present before the DHO when

he considered the sanctions to be imposed. *See Abbott v. Hollingsworth*, No. 14-6784, 2015 WL 1952355, at *4 (D.N.J. Apr. 29, 2015). "*Wolff* does not mandate that Petitioner be granted two hearings[,] one before the CDC and one before the DHO." *Rini v. Nash*, No. 05-2202, 2005 WL 2033689, at *3 (D.N.J. Aug. 22, 2015).

In his traverse, Petitioner suggests that there was "no way" the CDC, consisting of Assistant Director/Chairperson Jackie Diggs, "could be impartial and partake in the decision-making body." (Doc. No. 22 at 4.) According to Petitioner, he and Diggs were constantly "at odds" and he submitted complaints about her to superior staff. (*Id.*) While Petitioner is entitled to an impartial hearing officer, *see Wolff*, 418 U.S. at 571, his conclusory allegation of bias is unavailing. In the context of a prison disciplinary proceedings, the requirement of an impartial tribunal "prohibits only those officials who have a direct personal or otherwise substantial involvement . . . in the circumstances underlying the charge from sitting on the disciplinary body." *See Meyers v. Aldredge*, 492 F.2d 296, 306 (3d Cir. 1974). Petitioner simply has not demonstrated that Diggs was "personally or substantially involved in the circumstances underlying [the investigation of the] charge" such that she should not have presided over his hearings. *See Greer v. Hogston*, 288 F. App'x 797, 799 (3d Cir. 2008). Petitioner's "generalized critique" of Diggs is insufficient

17

to demonstrate the degree of bias necessary to sustain a due process violation. *See Lasko v. Holt*, 332 F. App'x 474, 476 (3d Cir. 2009).

As set forth *supra*, Petitioner received his procedural due process rights under *Wolff* and LightHouse regulations. Petitioner was provided copies of each Incident Report; however, on several occasions, he refused to accept his copy and sign for it. On those occasions, the Incident Report was read to him. All of his CDC hearings were held more than 24 hours after notice of each Incident Report. Petitioner waived his rights to a staff representative and to call witnesses and on some occasions waived his right to appear altogether. Moreover, the CDC certified that Petitioner had been advised of his right to appeal and provided a copy of each report, which included reviews of the evidence relied upon and the rationale behind the disciplinary actions. Thus, the Court finds that Petitioner received all the procedural due process procedures to which he was entitled.[2] Moreover, review of the record unequivocally establishes that there was some evidence supporting the CDC and DHO's decisions. *See Speight v. Minor*, 245 F. App'x 213, 216 (3d Cir. 2007)

---

[2] In his traverse, Petitioner contends that his various mental and physical ailments were not considered during the CDC hearings. (Doc. No. 22 at 3.) However, nothing in the record before the Court indicates that Petitioner sought to present such evidence. See Laor v. Fed. Bureau of Prisons, No. 08-3532, 2009 WL 1410728, at *6 (D.N.J. May 15, 2009) (concluding that the inmate-petitioner was not denied an opportunity to present documentary evidence at his disciplinary hearing because "there [was] no indication in the DHO Report that he made any specific request[s] for documents that were denied").

(noting that "the 'some evidence' standard does not require . . . independent assessment of the credibility of witnesses or weighing of the evidence" (quoting *Hill*, 472 U.S. at 455-56)). The Court, therefore, will deny Petitioner's § 2241 petition.

### III.  CONCLUSION

For the foregoing reasons, the Court concludes that Petitioner failed to exhaust his administrative remedies, that he was accorded all of his due process rights under *Wolff*, and that there was some evidence supporting the decisions made by the CDC and DHO. Accordingly, Petitioner's § 2241 petition (Doc. No. 1) will be denied. An appropriate Order follows.


                                           s/ Sylvia H. Rambo
                                           United States District Judge

Dated:  September 28, 2021